FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 AUG 12 A 9:38
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

RICHARD CONCKLIN,

   Plaintiff,

v.

   CIVIL ACTION NO.: CV213-012

DR. PETER LIBERO, and
FRANK ADAIR,

   Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Richard Concklin ("Plaintiff"), who is currently incarcerated at the Federal Correctional Institution-Federal Satellite Low Camp in Jesup, Georgia, filed a cause of action pursuant to 28 U.S.C. § 1331 and Bivens v. Six unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Defendants filed a Motion to Dismiss and an Alternative Motion for Summary Judgment. Plaintiff filed a Response, and Defendants filed a Reply. For the reasons which follow, Defendants' Motions should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendants Libero and Adair denied him proper medical care and treatment. Specifically, Plaintiff asserts that he has a chronic cough. Plaintiff also asserts that he was diagnosed in May 2007 with having a small hernia, which has nearly quadrupled in size, and that he is in constant pain because of this untreated

condition.[1] Finally, Plaintiff asserts that he injured his arm in September 2007, and the injury has not been properly diagnosed or treated.

Defendants contend that Plaintiff failed to exhaust his administrative remedies as to his hernia and left arm claims. Defendants allege that Plaintiff fails to state a viable Eighth Amendment claim against them. Defendants also allege that they are entitled to qualified immunity.

I. **Failure to Exhaust**

   A. **Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

   B. **Discussion and Citation to Authority**

Defendants contend that, while Plaintiff exhausted his administrative remedies regarding his cough, he failed to do so for his hernia and left arm complaints. Defendants allege that Plaintiff filed appeals on the regional level for his hernia and left arm complaints, but he failed to file appeals with the General Counsel's Office. Defendants contend that Plaintiff failed to exhaust properly his administrative appeals

---

[1] Plaintiff had surgery to repair his hernia after he filed this cause of action. (Doc. No. 19-4, ¶¶ 9—14).

2

as to these two (2) claims. As a result, Defendants assert, Plaintiff's deliberate indifference claims as to his hernia and left arm should be dismissed.

Plaintiff asserts that he filed Administrative Remedy ("AR") Number 694600-F1 and complained about his hernia. Plaintiff contends that he did not file an appeal of the denial of this AR because of his "unfamiliarity with the administrative remedy process." (Doc. No. 23, p. 3). Plaintiff also contends, however, that he filed an appeal of this grievance, but this appeal was assigned a different AR Number, 709884-R1. As for his left arm complaints, Plaintiff contends that he filed AR Number 697248-F1, which was denied on August 8, 2012. Plaintiff also contends that he filed AR Number 719163-F1, which was denied on February 4, 2013.

42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter v. Nussle, 534 U.S. 516, 523 (2002). The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, even when the prisoner is seeking relief not provided for under the grievance process, exhaustion is still a prerequisite to his filing suit. Id. at 524; Booth v. Churner, 532 U.S. 731, 732 (2001). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th

AO 72A
(Rev. 8/82)

Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

"The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate is required to seek an informal resolution of an issue. 28 C.F.R. § 542.13(a). If an informal resolution cannot be had, the inmate can file a grievance with the Warden ("BP-9"), and the Warden has 20 days to respond. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director ("BP-10") within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons ("BP-11") within 30 calendar days of the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court

need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

Plaintiff filed AR Number 694600-F1 on April 18, 2012, and complained about his hernia condition. (Doc. No. 23-1, p. 24). This AR was denied on July 17, 2012. (Id. at p. 26).[2] There is no evidence that Plaintiff filed an appeal on the regional level or to the General Counsel's Office. Plaintiff then filed AR Number 709884-R1 with the Regional Office on September 12, 2012, and asserted that he had filed previous BP-9s and received no response. (Doc. No. 23-1, p. 27). Plaintiff filed AR Number 697248-F1 on July 19, 2012, and raised his concerns about his left arm. This AR was denied on August 8, 2012. (Id. at p. 9). Plaintiff then filed AR Number 719163-F1, again raising concerns about his left arm, on December 19, 2012, and he received a response on February 4, 2013. (Id. at pp. 3—5). Plaintiff filed an appeal with the Regional Office. His appeal (AR Number 719163-R1) was rejected on February 28, 2013, because he raised more than one issue. (Id. at p. 10). Plaintiff resubmitted his appeal, and his appeal was rejected once again on April 11, 2013, because he did not use the proper form. (Id. at p. 12). Plaintiff filed a third appeal, AR Number 719163-R3 on May 7, 2013. (Id. at p. 14). As of the date of Plaintiff's Response to Defendants'

---

[2] For some reason, this AR was not received in the Warden's office until June 29, 2012, after Plaintiff wrote a notice dated May 16, 2012, and stated that he had not received a receipt for the AR filed on April 18, 2012. (Doc. No. 23-1, p. 25).

5

Motion, Plaintiff had not received a response, but Plaintiff was notified that additional time was needed to respond. (Id.).

Plaintiff did not exhaust his administrative remedies regarding his complaints about his hernia or his left arm before he filed this cause of action. The undersigned recognizes Plaintiff's assertion that he did not file an appeal to the regional office for AR Number 694600-F1 because he was unfamiliar with the administrative remedies process. However, this assertion is rejected because Plaintiff's course of action with the administrative remedies process on later dates contradicts his assertion. The undersigned also recognizes Plaintiff's assertion that he did not receive a response to AR Number 709884-R1. Even if Plaintiff did not receive a response to this AR, once the time for a response expired, Plaintiff was to consider his AR responded to at the regional level and then was to file an appeal with the General Counsel's Office to complete the administrative remedies process. In addition, AR Number 697248-F1, which concerned Plaintiff's left arm issues, was denied on August 8, 2012. Instead of filing an appeal with the Regional Office (and then the General Counsel's Office, if necessary), Plaintiff filed AR Number 719163-F1 on December 19, 2012, and once again complained about not receiving treatment for his left arm. While Plaintiff filed several appeals after this AR was denied on February 4, 2013, that is of no moment. Even if the Court could construe the left arm issues on AR Number 719163-F1 as now being exhausted, Plaintiff did not exhaust his administrative remedies before he filed his Complaint on January 15, 2013. Plaintiff fails to meet the requirements of section 1997e(a), and his deliberate indifference claims regarding his hernia and left arm issues should be dismissed.

AO 72A
(Rev. 8/82)

## II. Summary Judgment

### A. Standard of Review

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the

record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

B. **Discussion and Citation to Authority**

Defendants aver that they are entitled to summary judgment in their favor on Plaintiff's deliberate indifference claim.[3] Defendants contend that Plaintiff received care and treatment for his cough. In fact, Defendants assert that Plaintiff has been seen by medical staff solely based on his cough complaints seven (7) times since October 2009. Defendants also assert that Plaintiff has not shown that his cough was a serious medical need or that they were deliberately indifferent to that need.

Plaintiff generally alleges that Defendants had a "pattern and practice of withholding required health care for a chronic cough[.]" (Doc. No. 23, p. 15). Plaintiff states that he recognizes that perfect health care in prison is not a possibility, but doctors within the penal system should use existing and emerging medical technologies to arrive at sound medical judgments.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.

---

[3] Given the undersigned's recommended disposition of Plaintiff's claims regarding his hernia and left arm issues in Section I of this Report, the discussion of Defendants' claimed entitlement to summary judgment shall focus only on Plaintiff's assertions regarding his cough.

1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that a mere difference of opinion as to a prisoner's diagnosis or course of treatment does not support a claim under the Eighth Amendment).

9

AO 72A
(Rev. 8/82)

Society's "contemporary standards of decency" do not condone the unnecessary and wanton denial of medical care to inmates, who cannot care for themselves while incarcerated. Estelle, 429 U.S. at 105. Otherwise, the "denial of medical care [to inmates] may result in pain and suffering which no one suggests would serve any penological purpose." Id. at 103. Therefore, under the Eighth Amendment, the government cannot deliberately ignore or withhold minimally adequate medical care to those inmates suffering from serious medical needs. Id. at 103-104.

However, the Supreme Court cautioned in Estelle that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." 429 U.S. at 105. Additionally, a difference in opinion between the prison's medical staff and the detainee as to diagnosis or course of treatment does not amount to a claim under the Constitution. Harris, 941 F.2d at 1505 (citation omitted). Only when deliberate indifference to an inmate's serious medical need is demonstrated to be "repugnant to the conscience of mankind" or offensive to "evolving standards of decency" will it give rise to a valid claim of mistreatment under the Eighth Amendment. Id.

Defendant Libero examined Plaintiff on October 20, 2009, based on Plaintiff's complaints of a cough after having an upper respiratory infection a few months prior. Plaintiff was prescribed prednisone and directed to follow-up at sick call or the chronic care clinic. (Doc. No. 19-4, pp. 6—8). Defendant Libero saw Plaintiff again on April 5, 2011, at which time Plaintiff denied having any chest pain but did complain of having an "intermittent cough that preceded use of ACE inhibi[t]ors." (Id. at p. 9).[4] Plaintiff was

---

[4] ACE, or angiotensin-converting enzyme, inhibitors help relax blood vessels and are used to treat conditions such as high blood pressure. http://www.mayoclinic.com/health/ace-inhibitors/HI00060.

given flunisolide for his chronic rhinitis and once again directed to follow up as needed. (Id. at p. 11). Plaintiff was seen again on September 6, 2011, and complained about a chronic cough which preceded his incarceration and lisinopril use. Plaintiff stated his cough was non-productive. Defendant Libero assessed Plaintiff as having chronic rhinitis, which had not improved. (Id. at pp. 14—15). Defendant Libero again saw Plaintiff on April 12, 2012, for a chronic care encounter. Plaintiff complained about having chronic coughing spells approximately twelve (12) times a day, which he claimed was not related to allergies, sinus problems, or a deviated septum which pre-dated his incarceration. Plaintiff also claimed that his cough was non-productive and was triggered by a "tickle" in his throat. (Id. at p. 16). Defendant Libero noted that medical staff had never noted Plaintiff had coughed in their presence, except for having bronchitis in early 2012. Defendant Libero requested that Plaintiff be seen by an otolaryngologist, or ear, nose, and throat ("ENT") doctor, for evaluation. (Id. at p. 20). Plaintiff was advised to follow up at the chronic care clinic as necessary. Defendant Libero again saw Plaintiff at the chronic care clinic on January 18, 2013, at which time Plaintiff complained of, *inter alia*, a chronic cough which occurred in spasms once or twice daily, which was non-productive, and not related to "time or activity[.]" (Id. at p. 22).[5] Plaintiff also reported that his cough was better since he stopped using a medication but that it was still present and bothersome. (Id.). Defendant Libero stated that Plaintiff's cough "ha[d] never been witnessed by staff[,] and he has never coughed while in Health Services." (Id. at p. 2, ¶ 6).

---

[5] This date is after Plaintiff filed his Complaint. The undersigned mentions this date only to show another instance of Plaintiff having received medical care for his complaints regarding his coughing.

11

Defendant Adair examined Plaintiff on January 28, 2011, at which time Plaintiff stated that his chronic cough was getting worse. Plaintiff also stated that he had the cough "way before he had" medications. (Doc. No. 19-5, p. 5). Plaintiff was to follow up in three (3) months' time. Plaintiff was seen on July 22, 2011, by Defendant Adair as a chronic care clinic visit. Though Plaintiff mentioned his cough, it was because he averred that his hernia had become more bothersome, especially when he coughed. (Id. at p. 8). Defendant Adair examined Plaintiff again on January 18, 2012. Plaintiff complained that his chronic cough was making his hernia continue to grow. Upon examination, Defendant Adair noted that Plaintiff had diminished breath sounds and assessed him as having bronchitis, not specified as acute or chronic. Defendant Adair ordered that Plaintiff take mometasone furoate twice a day for 180 days. (Id. at p. 13). Defendant Adair declared that Plaintiff's cough was diagnosed as being related to seasonal allergies and was being treated effectively with over-the-counter drugs and a steroid inhaler. (Id. at p. 2, ¶ 9).

The undersigned notes Plaintiff's submissions of several affidavits from his fellow inmates. These affidavits reveal that Plaintiff has had a cough since at least 2007, and the frequency of his coughing spells has increased since that time. These affidavits also reveal that Plaintiff's coughing can be loud and disruptive in the prison. (Doc. No. 23-14, pp. 15—23). However, these affidavits fail to create a genuine dispute as to any fact material to Plaintiff's deliberate indifference claim. The evidence before the Court reveals that Plaintiff made complaints about having a cough, and he was seen on several occasions for his cough. The evidence before the Court does not indicate that Plaintiff's cough—though bothersome and perhaps disruptive—is a

serious medical need. Even if Plaintiff's cough were a serious medical need, the evidence of record does not support a finding that there is a genuine dispute regarding whether Defendants were deliberately indifferent to that serious medical need. In fact, the evidence shows that Plaintiff received treatment for his cough (among other conditions). It appears that the basis of Plaintiff's cause of action is that he does not agree with the manner in which Defendants treated his condition. Unfortunately for Plaintiff, such is insufficient to sustain an Eighth Amendment claim. This portion of Defendants' Motion should be granted.

It is unnecessary to address the remaining portions of Defendants' Motions.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's deliberate indifference claims concerning his hernia and left arm issues be **DISMISSED**, without prejudice, and his deliberate indifference claim concerning his cough be **DISMISSED**, with prejudice.

**SO REPORTED** and **RECOMMENDED**, this 12th day of August, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)